Miles D. **WYNN** and Furniture Warehouse Sales of North Broadway, Inc., a Colorado corporation, Plaintiffs–Appellants,

v.

**ADAMS COUNTY BANK**, a Colorado corporation, Defendant–Appellee.

No. 85CA1139.

Colorado Court of Appeals,
Div. I.

March 24, 1988.
Rehearing Denied April 21, 1988.
Certiorari Denied Sept. 19, 1988.

Raphael M. Solot, Denver, for plaintiffs-appellants.

Sweeney, Ross & Deuben, P.C., William G. Ross, Lakewood, for defendant-appellee.

HUME, Judge.

Plaintiffs, Miles Wynn (Wynn) and Furniture Warehouse Sales of North Broadway, Inc. (Warehouse), appeal the trial court's directed verdict denying their damage

claim against defendant, Adams County Bank (Bank), for its wrongful seizure of plaintiffs' retail furniture business on North Broadway and its wrongful collection of rents from sublessees of its East Evans property. We affirm.

Warehouse and Wynn, the sole shareholder of Warehouse, entered into a series of secured loans with defendant. As security for the loans, plaintiff assigned the leasehold interest in its North Broadway store, granted a security interest with respect to the North Broadway store's furniture, fixtures, equipment, and inventory, and expressly assigned its right to rental receipts on its East Evans property.

## I.

■ Plaintiffs argue that defendant wrongfully "seized" its North Broadway store by proceeding under its security agreements without judicial process. We disagree.

Plaintiffs' characterization of defendant's action as a "seizure" of its business is misleading. The record supports the trial court's finding that defendant held the North Broadway store only to liquidate its security interest in personal property, rather than to operate the business as a going concern. That finding is binding on appeal. *See Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (Colo.1979).

■ When a debtor defaults, a secured creditor with a security interest in both personal and real property may proceed either under Article 9 of the Uniform Commercial Code against the personal property, or as to both the real and personal property, under the law regulating realty foreclosures. Section 4-9-501(4), C.R.S. A secured creditor's remedies are cumulative, and it is not required to elect among remedies. *Wiley v. Bank of Fountain Valley,* 632 P.2d 282 (Colo.App.1981).

Thus, we disagree with plaintiffs' contention that defendant was required either to foreclose under C.R.C.P. 120, or to bring an unlawful detainer action under § 13-40-101, C.R.S. (1987 Repl. Vol. 6A). Defendant had the option to proceed to enforce its personal property remedies under Article 9 of the U.C.C. Under that Article, a secured creditor has the right to take possession of the collateral of the defaulting debtor without judicial process if it can do so without breaching the peace. Section 4-9-503, C.R.S.

As an alternative to entering the debtor's premises and removing the collateral, a secured party has the option of disposing of the collateral on the debtor's premises. The U.C.C. provides that: "[W]ithout removal, a secured party may render equipment unusable and may dispose of collateral on the debtor's premises under section 4-9-504." Section 4-9-503, C.R.S. In exercising this option, a secured party's actions in disposing of the property must be "commercially reasonable." Section 4-9-503, C.R.S. (Official Comment). The record here supports the conclusion that the Bank's actions in disposing of the personal property on plaintiffs' premises were reasonable. Thus, we disagree with plaintiffs' contention that defendant did not have the option of disposing of the collateral on plaintiffs' premises.

## II.

■ Plaintiffs rely on *Fisher v. Norman Apartments, Inc.,* 101 Colo. 173, 72 P.2d 1092 (1937) for the proposition that defendant acted improperly in collecting rental proceeds without judicial process after plaintiffs' default. That reliance is misplaced.

Under common law, a mortgagee may rightfully take possession of mortgaged realty upon default of the mortgagor. However, Colorado has adopted a lien theory of mortgages, which generally prohibits a mortgagee from taking possession of real property security interests until a foreclosure and sale have occurred. Section 38-35-117, C.R.S. (1982 Repl. Vol. 16A).

*Fisher* and its progeny deal with the effect of an assignment of rents clause contained in a real property mortgage or deed of trust upon the mortgagee's right to possession of the leasehold premises on default. Here, however, defendant is an assignee of plaintiffs' right to collect rental

from lessees of its East Evans property, under a separate collateral assignment document. Unlike *Fisher, supra*, defendant did not seek the right to immediate possession of the leasehold. The trial court here found that although defendant collected rent after plaintiffs' default, it never took possession of the East Evans property.

Also a general assignment of rents clause in a mortgage which purports to give the mortgagee the right to collect rent on default has been held ineffective pending the filing of a foreclosure action. *See Martinez v. Continental Enterprises*, 730 P.2d 308 (Colo.1986). But here, unlike *Martinez*, the assignment of the lease expressly provides that the rents obtained under the assignment would be applied to reduce the balance due on the promissory note.

Under these circumstances, we hold that upon default an assignee of rental may rightfully collect the assigned rental and apply it against the secured indebtedness without first commencing foreclosure proceedings.

### III.

Plaintiffs next argue that the trial court erred in refusing to submit the question of whether the promissory note was in default to the jury. Again, we disagree.

A motion for directed verdict can only be granted when the evidence, considered in the light most favorable to the party against whom the motion is directed, compels the conclusion that reasonable persons could not disagree, and when no evidence has been presented that could sustain a jury verdict against the moving party. *McGlasson v. Barger*, 163 Colo. 438, 431 P.2d 778 (1967).

■ Here, it was undisputed that plaintiffs failed to make the February payment. However, they did present evidence that after they failed to make the February payment, a representative of defendant told them to hold off payment while a plan of voluntary liquidation was negotiated.

Although this evidence is irrelevant to whether plaintiffs defaulted, it may be ar-gued that it is relevant to whether defendant renounced its right to payment of the note or to look to the security to satisfy the obligation.

■ However, a renunciation of rights in a negotiable instrument must either be in writing or be accompanied by surrender of the instrument to the party to be discharged. Section 4–3–605, C.R.S.; *Metro National Bank v. Roe*, 675 P.2d 331 (Colo. App.1983). Plaintiffs' testimony was the only evidence tendered on this issue, and there was no evidence of any written renunciation or surrender. Thus, there was no legally sufficient evidence of renunciation, and the trial court properly directed a verdict in defendant's favor.

Finally, we find no merit in plaintiffs' argument that the Uniform Consumer Credit Code applies to this business loan transaction.

Judgment affirmed.

PIERCE and CRISWELL, JJ., concur.